IN THE UNITED STATES DISTRICT COURT
FOR THE NORHTERN DISTRICT OF ILLINOIS

Catalyst Consulting Group, Inc.,

                Plaintiff   Case# 2025-cv-4289

v.

Timothy Smith and Nicole Smith

                Defendants

**Plaintiff's Response to Motion to Dismiss**

Plaintiff, Catalyst Consulting Group, Inc. ("Catalyst"), by its attorneys, Patterson Law Firm, LLC, hereby respond in opposition to Defendants' Motion to Dismiss:

**Introduction**

On March 20, 2025, Defendant Nicole Smith was caught transferring Plaintiff's confidential information to her husband, Defendant Timothy Smith, so that he could transfer it to a competitor of Catalyst, Provisio Partners Illinois, LTD. ("Provisio"). Catalyst has pled that this was one of several instances where the Defendants used their access to Catalyst's confidential information to illicitly provide information to Catalyst's competitors, damaging Catalyst in the process.

    Fed R. Civ. P. 8(a) "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2008) (quoting) *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

    The plaintiff contends that because the only confidential information identified thus far consists of transferred resumes—and not the full spectrum of proprietary or confidential materials a business might hold—the Court should dismiss the complaint pursuant to Rule

1

12(b)(6). Plaintiff is required only to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007). Plaintiff has done so, and thus Defendant's Motion should be denied.

## Factual Background

Plaintiff Catalyst Consulting Group is an Illinois Corporation operating primarily in the Chicago area. Complaint ("Comp."), ¶ 1, 7.

Defendants Timothy and Nicole Smith are both citizens of Indiana and former employees of Catalyst. *Id*. at ¶¶ 2-3. Mr. Smith was employed by Catalyst from 2005 to December 2024. *Id*. at ¶¶ 15, 24. At the time of his resignation, Mr. Smith was Catalyst's Chief Operating Officer. *Id*. at ¶ 16. Mrs. Smith began working with Catalyst as a contractor in August 2017. *Id*. at ¶ 19. Mrs. Smith was hired as a full-time employee of Catalyst in January 2023. *Id*. at ¶ 20.

Around July 2024, Mr. Smith's job performance began to suffer, as he prepared to quit his role with Catalyst, he accomplished less work and failed to maintain client relationships. *Id*. at ¶¶ 21-23. Mr. Smith began neglecting his work in favor of developing new business for his own benefit with Provisio, a competitor of Catalyst's. *Id* at ¶ 51. Mr. Smith then resigned from Catalyst in December 2024. *Id*. at ¶ 24.

After Mr. Smith's resignation, Catalyst's CEO, Arvin Talwar, called a meeting with Mrs. Smith, Tim's wife. *Id*. at ¶ 25. Arvin asked Mrs. Smith if she could continue performing her duties at Catalyst despite her husband's departure, and Mrs. Smith assured him that she could perform her duties in Catalyst's best interests. *Id*. at ¶¶ 26-28. Catalyst relied on Mrs. Smith's assurances and kept her in her position. *Id* at ¶ 29.

Mr. and Mrs. Smith both used their positions at Catalyst and the access it afforded them to transfer Catalyst's confidential business information, including information regarding job

2

applicants, clients, and internal processes and procedures to Catalyst's competitors. *Id*. at ¶¶ 44-45.

Catalyst has witnessed at least two instances in which either Mr. or Mrs. Smith accessed and transferred or attempted to access and transfer Catalyst's confidential information to a competitor. On March 4, 2025, Mr. Smith attempted to convince a Catalyst employee, Stephanie Perrin, to forward him Catalyst's confidential business information. *Id*. at ¶¶ 31-32.

On March 20, 2025, Mrs. Smith held a Microsoft Teams meeting with her then-supervisor, Eric Talwar, the son of Catalyst's owner. *Id*. at ¶ 33. When Ms. Smith shared her screen, a text exchange with her husband Mr. Smith was visible. *Id*. at ¶ 35. The texts read "[a]s I'm going through resumes for the dip shit squad do you want me to pull any for provisio?" *Id*. at ¶ 37. Mr. Smith replied "[y]eah I would," and when Mrs. Smith stated what roles the resumes were for, he replied "[t]hose are all the roles we'll need." *Id*.

Provisio is a direct competitor of Catalyst (*Id*. at ¶ 38), and this exchange was part of an ongoing scheme to transfer Catalyst's confidential information to competitors for the Defendants' benefit at the cost of Catalyst's interests. *Id*. at ¶¶ 44-45. This scheme involved the transfer of confidential information regarding potential employees and applicants, as well as information about clients and Catalyst's internal processes and procedures. *Id*.

Catalyst operates in a competitive industry with a limited supply of talent, and its ability to attract talent is key to its competitive edge. *Id*. at ¶ 41.

Additionally, Mr. and Mrs. Smith's positions gave them access to Catalyst's most sensitive proprietary information. *Id*. at ¶¶ 42-43.

The loss of this information damaged Catalyst in various ways: through lost market share and loss of competitiveness (*Id*. at ¶¶ 53(e), 61(e), 76(d)), through the loss of its clients (*Id*. at 53(b), 61(b)), through the loss of the value of its proprietary and confidential information (*Id*. at ¶¶ 53(d), 61(d), 76(c)), through the loss of applicants for employment and the costs of restarting its hiring processes (*Id*. at ¶¶ 53(c), 61(c), 76(b)), and through the amounts paid to Defendants while they were working against its interests on company time. *Id*. at ¶¶ 53(a), 61(a), 76(a).

## Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint, and not the merits of the case. *Gibson v. City of Chicago*, 910 F.3d. 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, a plaintiff must assert "well-pled factual allegations," which "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; see *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." To survive a motion to dismiss, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things

have happened, nor did they happen." *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

## Argument

**A. Personal Jurisdiction**

This Court may exercise personal jurisdiction over the Defendants if both state and federal constitutional requirements are satisfied. *Illinois v. Hemi Group LLC*, 622 F.3d 754, 756 (7th Cir. 2010). Illinois' long-arm statute authorizes personal jurisdiction over any individual transacting any business within Illinois, committing any tortious act within Illinois, and to the full extent permitted by the Constitution of the United States. 735 ILCS 5/2-209(a)-(c). "Under the. . . Fourteenth Amendment's due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant had certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Mobile Anesthesiologists Chic., LLC v. Anesthesia Assoc. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (internal citations omitted).

Personal jurisdiction can be general, which is based on the defendant's continuous and systematic contacts with a state, or specific, which is based on the defendant's state contacts which relate directly to the challenged conduct or transaction. *Northern Grain Mktg., LLC v. Greying*, 743 F.3d 487, 492 (7th Cir. 2014). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id*. (internal citation omitted).

Courts in the Seventh Circuit have exercised specific personal jurisdiction over defendants based solely on the fact of their employment by an Illinois corporation, even where the

5

defendants worked remotely from outside the state and never worked from a location in Illinois. *See Lauras Int'l (USA) LLP v. Hensley Consulting LLC*, 2024 U.S. Dist. LEXIS 223541, *2 (N.D. Ill. 2024) (Holding that an Illinois Court could exercise personal jurisdiction over a Kentucky citizen working remotely for an Illinois company, in a breach of fiduciary duty action, because "Defendants purposefully availed themselves of the privilege of conducting business in Illinois by virtue of their contractual, commercial, and lengthy employment relationship with an Illinois company"); *Tekway, Inc. v. Agarwal*, 2020 U.S. Dist. LEXIS 186034, *21 (N.D. Ill. 2020) (Holding that an Illinois Court could exercise personal jurisdiction over an out of state employee by an in-state employer because the employee "entered into an employment relationship with an Illinois company, and the claims at issue arise out of that relationship).

Defendants cite *Walden v. Fiore and Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*. in support of its assertion that this Court may not exercise personal jurisdiction over the Defendants. However, neither case involved a situation similar to the one at hand. In *Walden*, the Supreme Court held that a Nevada court could not exercise personal jurisdiction in a *Bivens* action over a DEA agent, with no contacts with Nevada, based on an assertion that the agent knew that the arrest in Georgie would delay the release of certain funds in Nevada. *See* 571 U.S. 277, 279-282 (2014). In *Advanced Tactical Ordnance Sys.*, the Seventh Circuit held that an Indiana Court could not exercise personal jurisdiction over a California company in a trademark action brought by an Indiana company for alleged infringement by the California company, when both companies bought the rights to certain intellectual property from a third, Mexican corporation. In both cases, the Defendants had no direct relationship with the forum state.

Here, both Defendants worked for many years in the downtown Chicago office and then began to work remotely during COVID. Defendants worked for an Illinois corporation and

6

misappropriated their confidential business information, then illicitly transferred that information to another Illinois corporation. The plaintiff is asserting liability based on this conduct. Thus, Defendants availed themselves of the forum state, Illinois, by working for an Illinois corporation with its primary office in Illinois, and the injury arises from its forum-related activities (misappropriating confidential information from an Illinois corporation, which defendants sent to a second Illinois corporation).

Thus, this court may exercise personal jurisdiction over the Defendants in relation to Plaintiff's claims.

**B. Fraud**

The heightened pleading standard of Rule 9 requires that Plaintiffs "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In the Seventh Circuit, this means that the complaint "must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.' *United States ex rel. Sibley v. Univ. of Chi. Med. Ctr.*, 44 F.4th 646, 655 (7th Cir. 2022) (quoting *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018)). In other words, "plaintiffs must inject 'precision and some measure of substantiation into their allegations of fraud.'" *Id*. (quoting *United States ex rel. Mamalakis v. Anesthetix Mgmt. LLC*, 20 F.4th 295, 301 (7th Cir. 2021)). However, "[t]o say that fraud has been pleaded with particularity is not to say that it has been proved (nor is proof part of the pleading requirement)." *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 855 (7th Cir. 2009). "It is enough to show, in detail, the nature of the charge, so vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *Id*. at 854-855.

The plaintiff has met its burden. Plaintiff alleges the who: Mr. and Mrs. Smith; the what: forming a conspiracy and then acting to access and transfer Plaintiff's confidential business information to competitors, while Mrs. Smith in the meantime assured Plaintiff of her loyalty to the company; the when: beginning in July 2024 and extending through the end of Mrs. Smith's employment; and the how: using the unique access afforded by their positions with Plaintiff to access and transfer Plaintiff's confidential information.

The complaint also makes these allegations with "precision and some measure of substantiation." *United States ex rel. Sibley*, 44 F.4th at 655. The complaint alleges specific statements and actions that constituted the fraud which occurred on specified dates. Comp. at ¶¶ 21, 23, 25-26, 30-37. The complaint also substantiates its allegations with affidavits and pictures of text messages. *Id.*, Ex. A.

Defendants argue that a promise of future performance cannot support an action for fraud unless a scheme to defraud is alleged. ECF No. 6, p. 6.

Defendant admits that Plaintiff alleges such a scheme, but says the allegation is "conclusory." *Id*. To the contrary, Plaintiff provides direct substantiation that the Defendants were involved in such a scheme. The text messages witnessed by the Plaintiff show the Defendants engaged in a scheme to illicitly transfer Plaintiff's confidential information to at least one competitor, Provisio. Comp. at ¶ 44. The plaintiff also alleges that this scheme extended to other confidential information, such as information regarding its clients and internal processes and procedures. Id. at ¶ 45.

Defendants next argue that Plaintiff's reliance on Ms. Smith's false statement was unreasonable, as they did not further investigate whether they could trust Mrs. Smith's representations. However, "whether reliance was reasonable is ordinarily a question of fact."

*Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 767 (7th Cir. 2010). Defendants do not explain why it was unreasonable for Plaintiff to take the word of an employee it had worked with since 2017 without issue (to its knowledge). Defendants cite *Teamsters Local 282 Pension Trust Fund v. Angelos* for the proposition that more investigation was necessary. However, Teamsters Local Fund refused to apply a requirement that Plaintiffs investigate a claim to a certain degree to plead reliance. *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530 (7th Cir. 1985) ("We therefore conclude that the Fund's lackadaisical investigation, even though a but-for cause of the injury, does not preclude the Fund's suit under the securities laws"). Instead, the portion of the fund cited by Plaintiff lists three defined circumstances in which reliance would not be justified: when the false statement is contradicted by truthful information already in the plaintiff's possession; where the false statement didn't affect the "total mix" of information available – i.e. when combined with the information in the plaintiff's possession, the false statement is not material; and when the false statement concerns a subject on which the plaintiff had more knowledge than Defendant. *Id*. None of these circumstances were present here, and Defendant does not attempt to explain how they could be. Defendants cite no source, statutory or otherwise, which would require Plaintiff to perform additional investigation in this case, or which would allow a court to quantify what level of investigation must be pled.

Thus, Plaintiff has pled its fraud claim with the level of precision and substantiation necessary to survive a motion to dismiss.

## C.  Fiduciary Duty

A claim for a breach of fiduciary duty requires "plaintiffs to establish the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach." *Alonso v. Weiss*, 932 F.3d 995, 1001 (7th Cir. 2019).

A fiduciary "owes a duty of loyalty to the entity for whom the fiduciary is acting." *Advantage Mktg. Grp. v. Keane*, 2019 IL App (1st) 181126, ¶ 27 (citations omitted). Where the fiduciary is acting on behalf of an employer, the "duty of loyalty to the employer extends to officers, directors, and employees." *Id*. at ¶ 22 (citations omitted). To avoid a breach of this duty a "fiduciary cannot act inconsistently with his agency or trust and cannot solicit his employer's customers for himself." *Id*. (citations omitted).

Defendants allege that Plaintiff has not done enough to plead a breach of this duty. In an ironic twist, Defendants embark on lengthy exegeses of the legal standards governing proper pleading, yet they fail to engage with the underlying facts of the very cases they cite, omitting any discussion of what level of factual detail courts have deemed sufficient. Defendant relies extensively on *Iqbal v. Ashcroft* for the assertion that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual *allegations*." 556 U.S., 662, 679 (2009) (emphasis added).

The plaintiff has provided, in the complaint, such factual allegations which are sufficient on a Motion to Dismiss, including at least as much as has been found sufficient in other, similar cases.

For instance, in *Bay Fasteners & Components, Inc. v. Factory Direct Logistics, LLC*, the court rejected a motion to dismiss based on the Defendants' contention that "plaintiff's trade secrets allegations fail as a matter of law 'because broad and conclusory references to customer data are not sufficient to state a claim[.]'" 2018 U.S. Dist. LEXIS 46155, *8 (N.D. Ill. 2018).

Similarly, in *Sievert Elec. Serv. & Sales Co. v. Storako*, the court found the Plaintiff was damaged in lost "economic value" due to a loss of "competitive advantage" from the illicit disclosure of unspecified confidential business information. 2024 U.S. Dist. LEXIS 177192, *13

10

(N.D. Ill. 2024). The court nevertheless rejected a motion to dismiss as "Defendants must develop facts countering plaintiff's allegations during the course of discovery. When reviewing a motion to dismiss, the court assumes non-conclusional allegations in the complaint as true, even if they appear 'doubtful in fact.'" *Id*. at 14 (quoting *Twombly*, 550 U.S. at 555).

In this case, Plaintiff pled that the disclosures of unspecified confidential information led to unquantified damages, which are sufficient to meet the Plaintiff's burden at the pleading stage. The plaintiff has provided actual evidence that the Defendants were misappropriating its confidential business information. The misconduct Plaintiff witnessed, plus the allegations in its complaint, "give enough details about the subject-matter of the case to present a story that holds together," which is all that's necessary at the pleading stage. *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

Defendants misuse *Swanson* to argue that a certain level of quantification of damages is necessary to survive a motion to dismiss. However, in *Swanson*, the Court did the opposite of what Defendants cite it for: the Seventh Circuit affirmed the lower court's refusal to dismiss the Plaintiff's discrimination claims, which relied on the lower pleading standard of Rule 8. The lower court (again, upheld by the Seventh Circuit) only dismissed the Plaintiff's fraud claims, which it held did not meet the higher pleading standard of Rule 9. *Swanson*, 614 F.3d at 405-06. Defendants are taking the Seventh Circuit's holding on the heightened pleading standard of Rule 9 and attempting to apply it to the pleading standard of Rule 8.

Lastly, Defendants cite *Foodcom Int'l v. Barry* for the proposition that employees are generally allowed to "plan to compete" with their employers, minus an agreement otherwise, as long as they don't misuse their employer's information or resources. ECF No. 6 at 8.

11

The plaintiff is correct that, to the extent that it's not inconsistent with an employment agreement or their fiduciary duty to the employer, employees are allowed to compete. However, an employee's fiduciary duty "prohibits a corporation's fiduciary from misappropriating corporate property and from taking advantage of business opportunities belonging to the corporation." *Id*. At ¶ 23 (citations omitted).

This is exactly what Plaintiff alleged Defendants have done: Defendants took corporate property, including application materials and client materials (Comp. at ¶¶44-45), that came to them pursuant to their employment by Plaintiff, and transferred them to competitors, the Plaintiffs breached their duty by engaging in an activity "'reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage.'" *Id*. (quoting *Lindenhurst Drugs, Inc. v. Becker*, 154 Ill. App. 3d 61, 67 (2nd Dist. 1987).

Furthermore, In *Foodcom* itself, the Seventh Circuit upheld a grant of a preliminary injunction based on allegations that the Defendants made a "business plan" to create a competing entity owned by a former customer of their employer. *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). The portion of *Foodcom* cited by Defendants provides a list of activities that breach a company's fiduciary duty. Still, it nowhere says that a given plan would not breach a fiduciary duty. *Id*. at 303. As stated above, Plaintiff has alleged exactly what *Foodcom* requires: that Defendants "actively exploit[ed] their positions within the corporation for their own personal benefits." *Id*.

Defendants' arguments attempt to use the fact that before discovery Plaintiff only has evidence of one instance where Defendant successfully misappropriated Plaintiff's confidential information (and one other instance where Mr. Smith unsuccessfully attempted to do so) as

12

showing that it hasn't *pled* more instances. The fact that Plaintiff has some evidence before discovery isn't a sign that its complaint should be dismissed; it's a sign that it has a greater than usual basis for its allegations. Thus, Plaintiff's breach of fiduciary duty claim should survive Defendant's motion to dismiss.

**D. Aiding and Abetting**

In Illinois, a claim for aiding and abetting includes the following elements: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27-28 (1st Dist. 2003) (quoting *Wolf v. Liberis*, 153 Ill. App. 3d 488, 496 (1st Dist. 1987)).

Defendants argue that Plaintiff's aiding and abetting claim must fail because the underlying breach of fiduciary duty claim—the principal violation—fails.

Plaintiff satisfactorily pleads its fiduciary duty claim for the reasons set forth above; it satisfactorily pleads the principal violation.

Defendants additionally assert that Plaintiff's aiding and abetting claim fails because defendants have not provided sufficient specificity in damages.

Defendants cite to *McReynolds v. Merril Lynch & Co.* for support. However, the Seventh Circuit didn't dismiss the case in *McReynolds* because of lack of detail in the damages, but because "the complaint did not adequately allege intentional discrimination in the first place." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 886 (7th Cir. 2012). Furthermore, Defendants neglect to mention *McReynold's* statement that "This is a complex discrimination claim, and we have observed that under Iqbal and Twombly, '[t]he required level of factual specificity rises

13

with the complexity of the claim.'" *Id*. at 887 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th Cir. 2011).

The present case is not a complex discrimination suit. This case concerns only the actions of the two Defendants, the instances where they transferred Plaintiff's confidential information to third parties, and what information was transferred. The plaintiff has alleged sufficient facts to state a claim and survive a motion to dismiss at this stage of the proceedings.

## Conclusion

For the foregoing reasons, Plaintiff requests that the Court enter an order denying Defendants' Motion to Dismiss and for any other relief the Court deems proper.

Dated: June 2, 2025

Respectfully submitted,

/s/Michael Haeberle
Michael Haeberle
David Moskowitz
Patterson Law Firm, LLC
200 W. Monroe St., Suite 2025
Chicago, IL 60606
mhaeberle@pattersonlawfirm.com
dmoskowitz@pattersonlawfirm.com
cmarte@pattersonlawfirm.com
Attorneys for Plaintiff Catalyst

**Certificate of Service**

The undersigned certifies that on June 2, 2025, I caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois Plaintiff's Response to Motion to Dismiss using the Court's ECF system, which automatically results in the transmission, by e-mail to all parties in this action who have registered use the ECF in the Northern District of Illinois, of a notice of electronic filing that constitutes service, pursuant to the general order issued by this Court and the Federal Rules of Civil Procedure.

/s/Michael Haeberle
Michael Haeberle
Patterson Law Firm, LLC
200 W. Monroe St., Suite 2025
Chicago, IL 60606
mhaeberle@pattersonlawfirm.com
Attorney for Plaintiff Catalyst