UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATALYST CONSULTING GROUP, INC., | ) |
| Plaintiff, | ) |
| | ) No. 25-cv-04289 |
| v. | ) |
| | ) Judge April M. Perry |
| TIMOTHY SMITH and NICOLE SMITH, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Catalyst Consulting Group, Inc. ("Plaintiff") brings this action against Timothy Smith and Nicole Smith (collectively, "Defendants"). Plaintiff alleges breach of fiduciary duty (Count I) against both Defendants, aiding and abetting breach of fiduciary duty (Count II) against Timothy Smith, and fraud (Count III) against Nicole Smith. Doc. 1. Defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. Doc. 6. For the reasons that follow, the Court denies dismissal of the complaint for lack of personal jurisdiction and grants dismissal for failure to state a claim only as to Count I against Timothy Smith.

**BACKGROUND**

Plaintiff is an Illinois corporation with its primary place of business in Chicago, Illinois. Doc. 1 ¶¶ 1, 7. Provisio Partners Illinois, Ltd. ("Provisio") is a direct competitor of Plaintiff and also conducts its business operations mainly in Chicago, Illinois. *Id.* ¶¶ 4, 38. Timothy Smith and Nicole Smith are married former employees of Plaintiff and are both citizens of Indiana. *Id.* ¶¶ 2-3, 18. According to the complaint, at the times Defendants worked for Plaintiff, they did so "in Cook County." *Id.* ¶¶ 2-3.

Plaintiff provides various technology services to businesses and government entities, including customer relations, case management, app development, and web design. *Id.* ¶ 6. "Over the course of its operations, [Plaintiff] has expended substantial efforts and funds recruiting and developing talent and human capital in an industry where talent is critical to success, in short supply, in high demand, and where [it] is looking for individuals with very unique skills." *Id.* ¶ 9. To protect its assets, Plaintiff limits its employees' access to client information and applicant information on a need-to-know basis. *Id.* ¶ 12.

Timothy Smith was employed by Plaintiff from 2005 to 2024, ultimately serving as Chief Operating Officer. *Id.* ¶¶ 15, 16, 24. Nicole Smith was employed by Plaintiff from 2017 to 2025, eventually as an assistant to Plaintiff's Chief Revenue Officer who she helped with recruitment and talent acquisition. *Id.* ¶¶ 19, 20, 39. Nicole Smith's role with Plaintiff allowed her access to all information on job applicants and client information related to new projects under development. *Id.* ¶¶ 14, 20.

In July 2024, Timothy Smith's job performance began to suffer as he worked less and failed to adequately maintain client relationships. *Id.* ¶¶ 21-23. Timothy Smith resigned from Plaintiff in December 2024. *Id.* ¶ 24. Nicole Smith was subsequently asked whether she could continue in her role given the conflicts between her husband and the company; she answered affirmatively and "made promises that she could keep her personal interests and work separate." *Id.* ¶¶ 26-28. Plaintiff relied on these representations and Nicole Smith continued her work with the company. *Id.* ¶ 29.

In March 2025, Plaintiff learned that Defendants were attempting to obtain and misuse confidential information belonging to Plaintiff. Specifically, on March 4, 2025, Timothy Smith met virtually via Microsoft Teams with Plaintiff's Vice President of Delivery and requested that

2

she forward him confidential documents and inquired about ongoing business matters. *Id.* ¶¶ 30-32. Additionally, during a Microsoft Teams meeting on March 20, 2025, Nicole Smith accidentally displayed texts she had sent to Timothy Smith in which Nicole Smith offered to forward Plaintiff's job applicants and resumes to Timothy Smith for use by Provisio. *Id.* ¶¶ 33-38. Specifically, Nicole Smith asked Timothy Smith: "[a]s I'm going through resumes for the dip shit squad do you want me to pull any for [P]rovisio? Of the good ones". *Id.* ¶ 37. Timothy Smith replied, "[y]eah I would … Make life easier in a few weeks or month[s]." *Id*. Nicole Smith then specified five roles she was looking through resumes for, and Timothy Smith replied, "[t]hose are all the roles we'll need". *Id*. Nicole Smith's employment was terminated shortly thereafter. *Id.* ¶ 39.

## ANALYSIS

Defendants seek dismissal for lack of personal jurisdiction and for failure to state a claim. The Court addresses each argument in turn.

The Court first considers whether personal jurisdiction exists for both Defendants. Plaintiff bears the burden of establishing personal jurisdiction once it has been challenged. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). When considering a motion to dismiss for lack of personal jurisdiction, the Court may consider facts in affidavits or other evidence submitted by the parties, *see Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003), but plaintiff is entitled to have the complaint read liberally and factual disputes resolved in its favor. *See N. Grain Mktg.*, 743 F.3d at 491. If a defendant submits evidence 'in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found.*, 338 F.3d at 783. If a court rules on a defendant's motion to dismiss for lack of personal

jurisdiction without holding an evidentiary hearing, the plaintiff "need only make out a prima facie case of personal jurisdiction." *Id.* at 782.

A federal court sitting in diversity "has personal jurisdiction over a nonresident only if a court of the state in which it sits would have such jurisdiction." *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995). The Illinois long-arm statute permits the exercise of personal jurisdiction to the fullest extent permitted by the Fourteenth Amendment's Due Process Clause. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021). Under the Due Process Clause, a court may not exercise personal jurisdiction over an out-of-state defendant unless the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two types of personal jurisdiction: general and specific. *Kipp v. Ski Enter. Corp. of Wisc.*, 783 F.3d 695, 697-698 (7th Cir. 2015). General jurisdiction is "all-purpose" while specific jurisdiction is case-specific. *Id.* General personal jurisdiction exists when a defendant is "at home" in the forum state. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). Specific personal jurisdiction exists when a defendant "purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010); *see also Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Purposeful direction exists where there is: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Felland*, 682 F.3d at 674–75. The question of personal jurisdiction ultimately

4

"hinges on the defendant's—not the plaintiff's—contacts with the forum state." *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023).

There is no dispute that Defendants are both citizens of Indiana and are not "at home" in Illinois, so this Court lacks general personal jurisdiction over them. The question therefore becomes whether a prima facie case of specific personal jurisdiction has been established. Here, the Court finds that the facts alleged establish that Defendants intentionally directed their tortious activities at Illinois with the knowledge that Plaintiff would be injured in Illinois. Defendants Timothy Smith and Nicole Smith were employed by Plaintiff, an Illinois corporation, for nineteen years and eight years, respectively. The complaint alleges that Defendants worked for Plaintiff "in Cook County." Doc. 1 ¶¶ 2-3. Defendants allegedly gathered confidential information owned by Plaintiff in Illinois and disclosed that data to Plaintiff's direct competitor, another Illinois corporation. In so doing, Defendants had to have known that Plaintiff would have been injured in Illinois. This is enough to establish purposeful availment.

The Court is not persuaded by Defendants' argument that Illinois does not have jurisdiction over them because some of their tortious acts (specifically, the two Microsoft Teams meetings alleged in the complaint and the text messages between Defendants) occurred while Defendants were in Indiana. As a preliminary matter, the Court notes that Defendants have not submitted any evidence about where physically they were located at the time of the relevant meetings or text messages, and the complaint does not allege that Defendants were in Indiana at the time of the tortious acts.[1] This judge has conducted many Microsoft Teams meetings with

---

[1] Similarly, although the parties hint at the fact that Defendants may have worked remotely, there is no evidence in the record to establish the fact that Defendants were remote workers, and if so, what percentage of the time. The complaint's allegation that Defendants "worked at Catalyst in Cook County" therefore stands unrebutted. Doc. 1 ¶¶ 2-3. At this stage, the Court must accept as true all well-pleaded

5

colleagues in the same building, so it is by no means a necessary inference that Defendants were at their home in Indiana when engaging in these online activities. But even if Defendants were in Indiana during those events, "physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 398 (7th Cir. 2020). It "is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a state in which business is conducted." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Post-pandemic, the workplace has entered a new era as employees work from home, sometimes part-time, sometimes full-time. Courts in this District frequently hold that communication with an out-of-state employer can support a finding of personal jurisdiction in the employer's home state. *See e.g., Tekway, Inc. v. Agarwal*, No. 19-CV-6867, 2020 WL 5946973, at *6 (N.D. Ill. Oct. 7, 2020) (finding personal jurisdiction in Illinois for employee working remotely because employee "knowingly and voluntarily entered into an employment relationship with an Illinois corporation headquartered in Illinois" and "[f]rom day one, she reaped the benefits of working for a company based in the forum state."); *Lauras Int'l (USA) LLP v. Hensley Consulting LLC*, No. 24-CV-00881, 2024 WL 5077768, at *9 (N.D. Ill. Dec. 10, 2024) (finding personal jurisdiction in Illinois for employee working remotely and reasoning that "an employment relationship is not a one-way street. Defendants purposefully availed themselves of the privilege of conducting business in Illinois by entering into a longstanding commercial and employment relationship with [plaintiff]"); *Liqui-Box Corp. v. Scholle IPN Corp.*, No. 19-CV-4069, 2020 WL 5593755, at *7 (N.D. Ill. Sept. 18, 2020) (finding

---

facts in the complaint and draw all reasonable inferences in favor of the Plaintiff. *In re Sheehan*, 48 F.4th 513, 520 (7th Cir. 2022).

a prima facie case of personal jurisdiction where defendant's remote work was closely tied to Illinois and defendant "obtained the information at the heart of this dispute from his Illinois-based employment.").

Nor does the exercise of personal jurisdiction over Defendants in Illinois "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. For two decades, Defendants enjoyed the benefits of employment with an Illinois company. Then, they allegedly used their positions of trust within that company to steal its confidential information, in order to court favor with another Illinois company. Illinois has a significant interest in the outcome of this litigation, and Defendants can hardly be surprised to be haled into court here. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."); *Felland*, 682 F.3d at 677; *see also Tekway*, 2020 WL 5946973, at *9 ("It does not seem outlandish or unfair for an employee to litigate an employment dispute in the employer's home state."); *Lauras Int'l (USA) LLP*, 2024 WL 5077768, at *11 ("There is nothing unfair about litigating in the forum where an employee had frequent and substantial contact."). For these reasons, the Court finds personal jurisdiction over Defendants proper.

The Court moves next to the question of whether Plaintiff has plausibly alleged its claims against Defendants. Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed when a plaintiff fails to state a claim upon which relief can be granted. A Rule 12(b)(6) motion is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To

survive a motion to dismiss, a plaintiff need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Count I alleges breach of fiduciary duty by both Defendants. The elements of a breach of fiduciary duty under Illinois law are: "(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains." *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013). Employees owe a duty of loyalty to their employers. *Lawlor v. N. Am. Corp. Illinois*, 983 N.E.2d 414, 433 (Ill. 2012). Illinois courts "construe[] the duty of loyalty to prohibit officers or employees from improperly competing with their employer, soliciting the employer's customers, enticing co-workers away from the employer, diverting business opportunities, engaging in self-dealing and/or otherwise misappropriating the employer's property or funds." *Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 831 (N.D. Ill. 2006) (collecting Illinois cases).

The parties disagree about whether the complaint sufficiently sets out allegations that Defendants breached their duty to Plaintiff and that such actions proximately caused harm to Plaintiff. Here, the complaint alleges that Nicole Smith gathered resumes to send to a competing

8

company while she was still employed by Plaintiff. The Court views this as a diversion of Plaintiff's opportunity to hire talent, a misappropriation of Plaintiff's property, and an act of improper competition. The possibility that this only occurred once is inconsequential. *See Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 487 F. Supp. 3d 722, 734 (N.D. Ill. 2020) ("[B]reach of fiduciary duty… [does not] require[] a plaintiff to prove an ongoing scheme or repeated conduct."). The Court also does not view Plaintiff's alleged harms as purely speculative – the text messages between Defendants make clear that Provisio and Plaintiff were hiring for the same positions. The complaint also alleges that the companies performed similar services and talent "is both mission-critical and of limited supply." Doc. 1 ¶ 41. This is enough to establish injury for the purposes of a motion to dismiss, even though damages may be unquantified at this stage. *See Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024) ("Demanding details about loss in the complaint—as opposed to the summary-judgment stage—also is a problem because complaints need not plead damages… Complaints must allege *some* injury (otherwise the plaintiff lacks standing), but they need not narrate the *quantum* of injury. That's for a later stage.").

However, Plaintiff has not plausibly pled that Timothy Smith breached any fiduciary duty to Plaintiff. The complaint alleges that during the last six months of his employment, Timothy Smith worked less, did not maintain client relationships, and had other unspecified performance problems. Doc. 1 ¶ 22. But there are no allegations that during this time Timothy Smith was acting against Plaintiff's interests, and simple failure to perform one's job satisfactorily does not constitute a breach of fiduciary duty. *See Beltran*, 426 F. Supp. 2d at 831 ("[N]o court has recognized a breach-of-fiduciary-duty claim grounded on the fact that an agent fell asleep on the job or otherwise failed to perform job requirements satisfactorily."); *Gavin/Solmonese LLC v.*

9

*Kunkel,* No. 16-CV-1086, 2019 WL 1125792 at *10 (N.D. Ill. 2019) ("Illinois courts recognize that 'self-dealing scenarios,' as opposed to instances of 'negligent or substandard job performance,' typically form the basis for viable breach of fiduciary duty claims."). Nor are there any allegations from which it can be inferred that Timothy Smith's fiduciary duties extended past his resignation date. Without some type of binding post-employment agreement, a fiduciary relationship ends at the time the employment relationship ends. *See Prudential Insurance Co. v. Sempetrean*, 525 N.E.2d 1016, 1020 (Ill. App. Ct. 1988) ("As a general rule, the principles of good faith, loyalty and personal interest of an agent are not applicable following termination of an agency relationship. After such termination, the former agent may, absent an express covenant to the contrary, negotiate for his own interest and may act adversely to his former principal."). For these reasons, Count I survives as to Nicole Smith, but is dismissed without prejudice as to Timothy Smith.

Count II alleges that Timothy Smith aided and abetted Nicole Smith in breaching her fiduciary duty. In Illinois, to state a claim for aiding and abetting, a plaintiff "must allege (1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Heffernan v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006).

Plaintiff plausibly alleges that such a situation occurred when Timothy Smith and Nicole Smith discussed and agreed to the resumes to pull from Plaintiff's prospective applicant pool for the use of Plaintiff's competitor. It is a reasonable inference from the text messages that Timothy Smith's actions went beyond mere encouragement given that he affirmed the job positions for which Provisio would need applicants, and he is the one who agreed to transfer the information to Provisio. Moreover, as Timothy Smith had previously been a high-level executive with

10

Plaintiff, it is also a reasonable inference that Timothy Smith had an understanding of the type of injury that could be caused by providing this information to a competitor. The Court therefore finds Count II adequately pled.

Count III alleges fraud by Nicole Smith. In Illinois, the elements of common law fraud are "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996). Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead with particularity the circumstances constituting fraud: specifically, "the who, what, where, when, and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (discussing that fraud pleading requires plaintiff to identify the "person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."). "Malice, intent, and other conditions of a person's mind," by contrast, "may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) does not require the presentation of a pretrial memorandum detailing every bit of evidentiary support for Plaintiff's case. *See U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 855 (7th Cir. 2009) ("To say that fraud has been pleaded with particularity is not to say that it has been proved (nor is proof part of the pleading requirement).").

The Court finds that Plaintiff has met Rule 9(b)'s requirements in this case. Plaintiff alleges that shortly after Timothy Smith's resignation in December 2024, Nicole Smith had a meeting with Plaintiff's CEO. At that meeting, the CEO asked if Nicole Smith could continue on in her role despite the problems between Plaintiff and her husband. Nicole Smith answered

11

affirmatively and promised that she could keep her personal interests and work separate. Doc. 1 ¶¶ 64-66. Plaintiff contends that this was a lie, which Plaintiff relied upon to its detriment. The complaint further alleges that Nicole Smith told this lie for the purpose of continuing to have access to Plaintiff's confidential information so she could use that information to help her husband, who she knew would be engaging with Plaintiff's competitor. *Id.* ¶¶ 24-28, 68-71. If true, this is fraud. *See U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009) ("Simple breach of contract is not fraud, but making a promise while planning not to keep it is fraud, and this complaint alleges the promise, the intent not to keep that promise, and the details of non-conformity."); *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 641 (Ill. 1977) (discussing that recovery for fraud includes situations in which there is a false promise or representation of future conduct as a means to accomplish a scheme of fraud).

The Court is not persuaded by Defendants' argument that Plaintiff has alleged Nicole Smith's intent only generally. Rule 9(b) does not require more. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.") It is only after discovery that Plaintiff will truly know when Defendants formed their alleged scheme to defraud Plaintiff. But it is a reasonable inference from Nicole Smith's obvious animosity toward her employer (who she referred to as the "dip shit squad," Doc. 1 ¶ 37) in March 2025 that she may not have been forthright in December 2024 when telling Plaintiff she could keep her personal and professional lives separate.

Nor is the Court persuaded by Defendants' arguments that Plaintiff should have known better than to trust Nicole Smith's promise of loyalty, and therefore its reliance on her statement was not reasonable. Again, discovery may turn up evidence that Plaintiff knew full well at the time of the meeting that Nicole Smith was not trustworthy, but that certainly is not a reasonable

12

inference from the complaint. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 683 (Ill. 1989) (explaining the "well-established rule that one is justified in relying upon the representations of another, without independent investigation, where the person to whom the representations are made does not have the same ability to discover the truth as the person making the representations.").

Finally, Defendants argue that Plaintiff has not adequately pled damages from Nicole Smith's alleged fraud. It is true that a plaintiff must plead actual damages arising from its reliance on a fraudulent statement. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 406 (7th Cir. 2010) "The measure of damages in an action for fraud is determined from the loss to the plaintiff rather than from the gain to the defendant." *Shah v. Chicago Title & Tr. Co.*, 457 N.E.2d 147, 151 (Ill. App. Ct. 1983). Here, Plaintiff pleads the following harms: (1) payment of Nicole Smith after the fraudulent representations were made; (2) loss of applicants and damages necessitated by restarting the hiring process; (3) loss of proprietary information; and (4) resulting loss in market share and competitiveness. These allegations are thin and certainly will need to be proved, but if proved would constitute actual harm to Plaintiff. At this stage of proceedings, Plaintiff has done enough to plausibly allege a claim of fraud.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted only as to Count I against Timothy Smith. The dismissal of Count I against Timothy Smith is without prejudice.

Dated: September 25, 2025

_____
APRIL M. PERRY
United States District Judge